## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

---

OLACHI MEZU-NDUBUISI,

                    Plaintiff,

          v.

UNIV. OF WIS.–MADISON, BD. OF REGENTS OF          OPINION and ORDER
THE UNIV. OF WIS. SYS., ROBERT GOLDEN,
ELLEN WALD, RYAN MCADAMS, UNITYPOINT                  24-cv-31-jdp
HEALTH–MERITER HOSPITAL, PAM WETZEL, SUE
ERICKSON, NINA MENDA, MERITER EXE. BD.
COMM., AMANDA LINDSAY, KARL NIBBELINK,
ELIZABETH PRITTS, SHERRY HENSELER, and
DOES 1–10,

                    Defendants.

---

Plaintiff Dr. Olachi Mezu-Ndubuisi, a black American woman of Nigerian national origin, was employed as a physician-scientist at the University of Wisconsin School of Medicine and Public Health. She had practice privileges both at the UW Hospital and at UnityPoint Health–Meriter Hospital. She alleges that defendants at both institutions mistreated her because of her race, national origin, and disability, they retaliated against her for using medical leave for herself, and they interfered with her ability to use medical leave for her daughter. Mezu-Ndubuisi brings claims under Title VII of the Civil Rights Act of 1964 (Title VII), the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Family Medical Leave Act (FMLA).

The UW Hospital defendants and the Meriter defendants have separately moved to dismiss. Dkt. 65 and Dkt. 67. Several of Mezu-Ndubuisi's claims have insurmountable problems. The Title VII, ADA, and Rehabilitation Act claims against the individual defendants

fail because only employers are liable under these statutes. Some of Mezu-Ndubuisi's FMLA claims are precluded by sovereign immunity and other pleading obstacles.

Mezu-Ndubuisi's Title VII and ADA claims are apparently untimely because she brought this lawsuit more than 90 days after receiving notice of her right to sue. The evidence submitted by the parties shows that Mezu-Ndubuisi is not entitled to equitable tolling of statute of limitations. But in reaching this conclusion, the court has relied on evidence outside the complaint, so the court will convert the motions to ones for summary judgment on this point. Although it appears that Mezu-Ndubuisi has been fully heard on the point, the court will give Mezu-Ndubuisi the opportunity to show cause why summary judgment should not be granted on her Title VII and ADA claims.

Mezu-Ndubuisi has stated claims under the Rehabilitation Act and the FMLA against her employers and some of the individual defendants who supervised her.

So the court will grant both motions in part. The result is that Mezu-Ndubuisi will proceed on three claims only: (1) a Rehabilitation Act claim against the Board of Regents and Meriter; (2) an FMLA retaliation claim against Meriter and some of the individual defendant-supervisors; and (3) an FMLA interference claim against the Board of Regents and some of the individual defendant-supervisors.

BACKGROUND

The court provides here only a brief summary of Mezu-Ndubuisi's allegations, saving the details for where they matter to the analysis.

Starting in May 2020, Mezu-Ndubuisi was the subject of several patient safety reports and other allegations of substandard performance. Mezu-Ndubuisi ended up taking FMLA

leave for job-related stress, but she wasn't allowed to return immediately to practice. A UW Hospital committee recommended terminating Mezu-Ndubuisi's practice privileges unless she completed the Vanderbilt Comprehensive Assessment Program, which involved a psychiatric evaluation and other testing. Yet her privileges weren't restored even after she successfully completed the testing. Mezu-Ndubuisi's request for FMLA leave to care for her daughter was intentionally delayed, and she was harassed about returning to work while she was on leave. Mezu-Ndubuisi resigned in September 2021. She contends that the allegations of substandard performance were unfounded and that defendants mistreated her due to her race and disabilities, and to retaliate against her for taking FMLA leave.

In May 2021, Mezu-Ndubuisi filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against the UW and the Meriter defendants. Dkt. 71-3 at 1, 3. The charges were divided into two EEOC cases and Mezu-Ndubuisi received right-to-sue letters.

In October 2023, Mezu-Ndubuisi filed suit against both the UW and Meriter defendants in the Central District of California, where Mezu-Ndubuisi had retained counsel, Valerie Ibe. Dkt. 36-4; *Mezu-Ndubuisi v. Univ. of Wis.–Mad.*, 23-cv-8516 (C.D. Cal.). On January 5, 2024, the court dismissed the case for lack of personal jurisdiction. Dkt. 36-6 at 3, 5.

Mezu-Ndubuisi filed this suit on January 17, 2024. Dkt. 1.

ANALYSIS

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v.*

3

*Pardus*, 551 U.S. 89, 93 (2007). The question is whether plaintiff provided defendants with fair notice of her claims and alleged facts plausibly suggesting that she is entitled to relief. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). The court may consider documents referred to in the complaint if they are central to plaintiff's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). Accordingly, the facts in this opinion are drawn mostly from the amended complaint and the documents referred to in it, which mostly concern the litigation of the EEOC cases and the case in California.

## A. Statute of limitations on Title VII and ADA claims

The basic rule is that under Title VII and the ADA, a plaintiff must file her suit within 90 days from the date the EEOC right-to-sue notice is actually received by the plaintiff or her attorney. *See Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999); *Jones v. Madison Serv. Corp.*, 744 F.2d 1309, 1312 (7th Cir. 1984) (per curiam). Title VII requires strict adherence to statutory time limits, although those limits are subject to equitable tolling in appropriate cases. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002).

Both sets of defendants contend that the complaint is untimely because it wasn't filed within 90 days of receipt of the EEOC's right-to-sue letters. If the facts alleged in the complaint establish a statute of limitations defense, that's a proper ground for dismissal under Rule 12(b)(6). *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

The court begins with the details of the timing. Mezu-Ndubuisi filed a single charge with the EEOC alleging discrimination by both UW Hospital and Meriter. Mezu-Ndubuisi provided her Fitchburg, Wisconsin, address to the EEOC and did not update it. *Id.* at 1. Shortly thereafter, the charges were split into two EEOC cases and assigned case numbers

443-2021-01485 for UW Hospital and 443-2021-01487 for Meriter. Dkt. 36-1 at 1; Dkt. 71-11 at 2.

The EEOC issued a right-to-sue notice for the '1485 charge against UW Hospital on April 3, 2023. The notice went to Mezu-Ndubuisi's Fitchburg address. Dkt. 36-3 at 1. In late May 2023, the EEOC sent a follow-up letter to the Fitchburg address because its records showed that Mezu-Ndubuisi hadn't downloaded the April 3 letter from its online portal. *See* Dkt. 56-1 at 1.

The EEOC issued a right-to-sue notice for the '1487 charge against Meriter on July 11, 2023. Dkt. 72-17 at 1–2. That notice also went to the Fitchburg address, with a copy to her counsel, Ibe, in California.

On October 9, 2023, Mezu-Ndubuisi filed an employment discrimination lawsuit in the Central District of California against both the state and Meriter defendants. The court dismissed the case on January 5.

Mezu-Ndubuisi filed her original complaint in this court on January 17, 2024.

**1. Meriter defendants**

The parties agree that that Ibe received actual notice of the right to sue them on July 12, 2023, apparently by letter to her office. *See* Dkt. 56 ¶ 24; Dkt. 72-17 at 2. Mezu-Ndubuisi brought this action well over 90 days later on January 17, 2024, so her Title VII and ADA claims against the Meriter defendants are untimely unless equitable tolling applies. Equitable tolling is not the norm; it is reserved for unusual circumstances in which the claimant has been diligently pursuing judicial remedies but makes an understandable error or is induced by her adversary to miss the deadline. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

5

Mezu-Ndubuisi contends that she's entitled to equitable tolling for the nearly three months that the California lawsuit was pending. That's doubtful, because there is no plausible basis for venue in California and no plausible basis for personal jurisdiction over the Wisconsin-based defendants. It appears that the case was filed in California solely for the convenience of counsel. The court does not consider Mezu-Ndubuisi's choice to file suit in California to be a good-faith error that would warrant equitable tolling.

But even if the court credited Mezu-Ndubuisi with the time the California case was pending, she still wouldn't establish equitable tolling for the full delay. For reasons that she does not explain, Mezu-Ndubuisi filed that action on October 9, 2023, 89 days after she received notice. So, even if the California lawsuit warranted equitable tolling, Mezu-Ndubuisi had only one day after the January 5, 2024, dismissal to bring this action. Mezu-Ndubuisi didn't file her original complaint in this court until January 17, 2024, 12 days late. Mezu-Ndubuisi does not explain why she waited to file the California suit and why she did not immediately file her suit in this court once that case was dismissed.

It appears that Mezu-Ndubuisi is not entitled to equitable tolling and that her Title VII and ADA claims against the Meriter defendants are time-barred.

### 2. UW Hospital defendants

Mezu-Ndubuisi contends that she received the right-to-sue letter for the '1485 charge against UW Hospital on December 5, 2023, which is when Ibe obtained a copy of the right-to-sue notice. Dkt. 43 ¶ 16; Dkt. 44 ¶ 16. The UW Hospital defendants contend that Mezu-Ndubuisi received constructive notice of her right to sue them on April 3, 2023, or alternatively, May 25, 2023. Those are the dates that the EEOC sent right-to-sue notices for the '1485 charge to the Fitchburg address.

6

When actual receipt of the right-to-sue letter is delayed by fault of the plaintiff, "the constructive receipt doctrine applies and the 90–day clock starts running once delivery is attempted at the last address provided." *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005). Mezu-Ndubuisi, as the one who filed the EEOC charge, has the obligation to notify the EEOC of any change of address. *St. Louis v. Alverno Coll.*, 744 F.2d 1314, 1316 (7th Cir. 1984); 29 C.F.R. § 1601.7(b). Mezu-Ndubuisi acknowledged her obligation to update her address when she signed the EEOC charge. Dkt. 41-1.

Mezu-Ndubuisi moved to New York in late June 2022. She hasn't described any steps that she took to ensure that mail sent to her Fitchburg address would be forwarded to her New York address. She would have received actual notice of her right to sue for the '1485 charge shortly after April 3, 2023, had she simply updated her address with the EEOC as she was required to do. Under the constructive receipt doctrine, Mezu-Ndubuisi received notice of her right to sue for the '1485 charge on April 3, 2023, so her deadline to file was July 3, 2023 (because 90 days later falls on Sunday, July 2). But she didn't file the California lawsuit until October 9, 98 days late. Mezu-Ndubuisi's Title VII and ADA claims against the UW Hospital defendants are time-barred.

Mezu-Ndubuisi's arguments against application of the constructive notice doctrine are unpersuasive. Mezu-Ndubuisi faults the EEOC for failing to notify her or Ibe of the right to sue for the '1485 charge between April and July 2023, during which time Ibe says that she was in constant communication with EEOC staff. *See* Dkt. 45 ¶ 5. But the EEOC had already notified Mezu-Ndubuisi of her right to sue by mail to the address of record in Fitchburg. Mezu-Ndubuisi faults the EEOC for splitting the original charge that she filed in May 2021 into the '1485 and '1487 charges. Mezu-Ndubuisi says that she was unaware of the EEOC's splitting

of the charges, so she believed that the right-to-sue notice for the '1487 charge also applied to the UW Hospital defendants. *See* Dkt. 44 ¶ 10. But that's flatly contradicted by Ibe's email to the EEOC, acknowledging that she had received the right-to-sue letter for Meriter, and asking the EEOC to issue the right-to-sue letter for the UW Hospital. Dkt. 42-5.

Mezu-Ndubuisi's Title VII and ADA claims are untimely. But in reaching this decision the court has relied on the evidence submitted by the parties. Accordingly, on the timeliness of the Title VII and ADA claims, the court will convert the motion to dismiss to one for summary judgment. The court will give Mezu-Ndubuisi the opportunity to show cause why the court should not grant summary judgment to defendants on the Title VII and ADA claims.

**B.  Individual liability under Title VII, the ADA, and the Rehabilitation Act**

Employment discrimination claims under Title VII, ADA, and Rehabilitation Act must be brought against the plaintiff's employer. *See, e.g.*, *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court was also correct to dismiss [the individual defendants] in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA."); *Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012) ("Individual people who are agents of the employer cannot be sued as employers under Title VII."); *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("[T]he ADA provides only for employer, not individual, liability."). The court will grant defendants' motions to dismiss Mezu-Ndubuisi's Title VII, ADA, and Rehabilitation Act claims against the individual defendants.

The court will also dismiss these claims against defendant UW-Madison. The Board of Regents was Mezu-Ndubuisi's employer, not UW-Madison. *See Rosneck v. Evers*, No. 19-cv-702-jdp, 2020 WL 5802041, at *2 (W.D. Wis. Sept. 29, 2020) (citing *Garner v. State*, 2011 WI

App 1, ¶ 2). The court will also dismiss these claims against defendant Executive Board because it's a committee comprised of unidentified Meriter employees.

Mezu-Ndubuisi argues that she should be allowed to proceed against the individual UW Hospital defendants on her employment discrimination claims because she's sued them in their official capacities and requested injunctive relief. In some cases, a plaintiff may proceed against a state official on an employment discrimination claim for injunctive relief under the doctrine of *Ex Parte Young. See Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 606 (7th Cir. 2004). Under that doctrine, "private parties may sue individual state officials for prospective relief to enjoin *ongoing* violations of federal law." *Sherwood v. Marchiori*, 76 F. 4th 688, 693 (7th Cir. 2023) (emphasis added). But Mezu-Ndubuisi doesn't allege any ongoing violation of her federal rights in the amended complaint. The alleged unlawful conduct stopped when Mezu-Ndubuisi resigned in September 2021, and she doesn't seek reinstatement. The official capacity claims against the UW Hospital defendants are dismissed.

## C.  Hostile work environment and constructive discharge claims

Mezu-Ndubuisi clarifies in her briefs in opposition that she's asserting these claims under Title VII. The court has concluded that these claims are untimely unless Mezu-Ndubuisi can show cause otherwise. That includes her hostile work environment and constructive discharge claims.

## D.  Rehabilitation Act claims

Defendants contend that Mezu-Ndubuisi has pleaded herself out of court because: (1) prevailing on a Rehabilitation Act claim requires her to prove that she was discriminated against "solely" by reason of her disability; and (2) she alleges that defendants' actions were motivated by racism and retaliation. To *prove* a claim of disability discrimination under the

9

Rehabilitation Act, Mezu-Ndubuisi will have to show that she suffered an adverse employment action solely by reason of her disability. *See Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022). But, at the pleading stage, she can state as many claims as she has "regardless of consistency." *See* Fed. R. Civ. P. 8(d)(3). Drawing all reasonable inferences in her favor, as the court must at this stage, Mezu-Ndubuisi's allegations plausibly suggest that she was mistreated based on a perceived disability.

The basic rule is that to state a claim for employment discrimination, a "plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. L. Off. of Terrence Kennedy, Jr.*, 709 F. App'x 826, 829 (7th Cir. 2017). A plaintiff states a claim that her employer regarded her as disabled under the Rehabilitation Act if her allegations support a plausible inference that the employer regarded her as having an impairment that substantially limited her ability to work and that the perception caused an adverse employment decision. *Cf. Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); *Kurowski v. Shinseki*, 557 F. App'x 549, 553 (7th Cir. 2014).

Mezu-Ndubuisi alleges that she was regarded as disabled based on her: (1) prior brain aneurysm; and (2) mental health issues related to giving birth to a premature infant who died. Furthermore, Mezu-Ndubuisi alleges that she was subjected to unfounded patient safety reports, unwarranted Vanderbilt testing, excessive monitoring, and the wrongful denial of clinical privileges even though her work performance was outstanding and she successfully completed the Vanderbilt testing. Mezu-Ndubuisi's allegations are not a model of clarity, but they are enough to state a plausible disability discrimination claim based on the theory that she was regarded as disabled. The court will deny defendants' motions to dismiss on Mezu-Ndubuisi's Rehabilitation Act claim against the Board of Regents and Meriter.

10

### E. Plaintiff's FMLA claims

The motions to dismiss Mezu-Ndubuisi's FMLA claims present three issues: (1) whether the claims are timely; (2) whether sovereign immunity bars these claims against the Board of Regents; and (3) whether the individual defendants are liable based on their supervisory authority over Mezu-Ndubuisi and participation in the violations.

#### 1. Statute of limitations

The basic rule is that a plaintiff must bring an FMLA claim "'not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.'" *Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 332 (7th Cir. 2018) (quoting 29 U.S.C. § 2617(c)(1)). But if the employer acted willfully, the statute of limitations is extended to three years. *Id.* (citing 29 U.S.C. § 2617(c)(2)). In this case, Mezu-Ndubuisi's FMLA claims would be untimely unless the violations are willful.

To state a claim for a willful FMLA violation under § 2617(c)(2), the plaintiff's allegations must support a plausible inference that her employer either knew the FMLA prohibited its conduct or showed reckless disregard for whether it did. *Cf. id.* at 334.

Mezu-Ndubuisi brings FMLA claims based on retaliation and interference. Mezu-Ndubuisi alleges that defendants retaliated against her for using medical leave for herself, and interfered with her ability to use medical leave for her daughter. The FMLA provides that an eligible employee "shall be entitled to a total of 12 workweeks of leave during any 12–month period" for various reasons, two of which are relevant here: (1) to care for the employee's child if the child has a serious health condition; and (2) a serious health condition that makes the employee unable to perform the functions of the employee's position. 29 U.S.C. § 2612(a)(1)(C)–(D). "An interference claim requires proof that the employer denied the

11

employee FMLA rights to which she was entitled; a retaliation claim requires proof of discriminatory or retaliatory intent." *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 825 (7th Cir. 2012).

Regarding retaliation, Mezu-Ndubuisi alleges that three days after she took FMLA leave for herself, defendants Dr. Wald and Dr. Golden stopped her clinical practice. Less than a month later, Mezu-Ndubuisi alleges, an ad hoc committee comprised of defendants Dr. Nibbelink, Dr. Pritts, and nurse Henseler was formed to investigate unfounded safety reports and other false allegations of substandard performance. Mezu-Ndubuisi alleges that the committee ordered unwarranted Vanderbilt testing and gave the evaluators false information. Even though Mezu-Ndubuisi successfully completed that testing, the committee recommended restrictive conditions on her clinical practice, including repeated psychological assessments. Mezu-Ndubuisi specifically alleges that defendants' actions were willful. Mezu-Ndubuisi's allegations are enough to support a plausible inference that Wald, Golden, Nibbelink, Pritts, and Henseler retaliated against her because she took FMLA leave in October 2020 and that this violation was willful.

Regarding the interference claim, Mezu-Ndubuisi alleges that, on August 4, 2021, she provided sufficient notice of her intent to take leave to care for her minor daughter, who had serious health problems. Mezu-Ndubuisi also alleges that defendants Wald, Golden, and Dr. McAdams willfully delayed approving her request for more than five days. *See* 29 C.F.R. § 825.300(b)(1) ("When an employee requests FMLA leave . . . the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances."). Mezu-Ndubuisi also alleges that, starting in September 2021, Wald and Golden repeatedly harassed her about returning to work, which interfered with her

ability to care for her daughter. Mezu-Ndubuisi's allegations aren't very specific, but for pleading purposes they are enough to support reasonable inferences that: (1) McAdams, Wald, and Golden had no reason to delay her request for leave to care for her daughter; and (2) she still had leave available when Wald and Golden started harassing her about returning to work. *Cf.* 29 U.S.C. § 2612(a)(1) (stating that an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for certain reasons). Mezu-Ndubuisi has stated a plausible claim of willful interference.

Mezu-Ndubuisi has stated plausible willful violations of the FMLA based on theories of retaliation and interference. Because the last events on which Mezu-Ndubuisi bases her FMLA claims occurred in September 2021, she had until September 2024 to bring these claims. Mezu-Ndubuisi filed her original complaint much earlier than that, so her FMLA claims are timely.

### 2. Sovereign immunity

The Board of Regents contends that sovereign immunity bars Mezu-Ndubuisi's FMLA claims against it. Mezu-Ndubuisi brought her retaliation claim under the FMLA's self-care provision, § 2612(a)(1)(D), which doesn't abrogate a state's sovereign immunity under the Eleventh Amendment. *See Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 33 (2012); *Toeller v. Wis. Dep't of Corr.*, 461 F.3d 871, 879–80 (7th Cir. 2006). "The Board is an 'arm of the state' for Eleventh Amendment purposes." *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). The court will dismiss Mezu-Ndubuisi's retaliation claim against the Board of Regents.

The analysis is different for Mezu-Ndubuisi's interference claim against the Board of Regents. Mezu-Ndubuisi brings this claim under the FMLA's family-care provision,

13

§ 2612(a)(1)(C). The family-care provision is a valid abrogation of state sovereign immunity and Mezu-Ndubuisi may recover money damages on her interference claim against the Board. *See Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 725–26, 740 (2003). The court will not dismiss Mezu-Ndubuisi's interference claim against the Board based on sovereign immunity.

### 3. The meaning of "employer" under the FMLA

The next issue is whether any other defendant involved in the FMLA violations is an "employer" under the FMLA. The FMLA defines "employer" broadly enough to permit naming an employee of the defendant-employer as an additional defendant if the employee had "supervisory authority over the [plaintiff] and was responsible in whole or part for the alleged violation." *See Hemenway v. Rock Cnty.*, No. 18-cv-307-jdp, 2018 WL 6050906, at *4 (W.D. Wis. Nov. 19, 2018); *see also* 29 U.S.C. § 2611(4)(A)(ii)(l) (stating that an "employer" under the FMLA includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer").

Mezu-Ndubuisi alleges that Wald and Golden retaliated against her by stopping her clinical practice after she returned from FMLA leave. Golden is the dean of the UW School of Medicine, and Wald chairs its pediatrics department. Based on their high-ranking positions and authority to stop Mezu-Ndubuisi from practicing clinically, the court can plausibly infer that Golden and Wald had supervisory authority over Mezu-Ndubuisi. The court will deny the UW Hospital defendants' motion to dismiss Golden and Wald.

Mezu-Ndubuisi also alleges that ad hoc committee members Nibbelink, Pritts, and Henseler retaliated against her. But there's no allegation that any of these individuals had the authority to form the committee; they were only its members. Furthermore, Mezu-Ndubuisi alleges that the committee made only recommendations regarding her ability to practice; there's

14

no allegation that its recommendations were final. Mezu-Ndubuisi's allegations that the committee "acted in conjunction as agents, alter ego of [defendant] Meriter Executive Board" is a legal conclusion. And there are no allegations that the committee members held high-ranking positions. Mezu-Ndubuisi only alleges that Nibbelink and Pritts were doctors and that Henseler was a nurse. Mezu-Ndubuisi's allegations don't plausibly suggest that Nibbelink, Pritts, or Henseler had supervisory authority over her, so the court will dismiss the FMLA retaliation claim against them. The court will dismiss the FMLA retaliation claim against the Executive Board because Mezu-Ndubuisi hasn't specified its composition. There's no allegation that Nibbelink, Pritts, Henseler, or any other individual defendant sat on the Executive Board.

As for the interference claim, as explained above, Mezu-Ndubuisi's allegations plausibly suggest that Wald, Golden, and McAdams willfully delayed approving her request for more than five days, and that Wald and Golden repeatedly harassed her about returning to work even though she had available leave. McAdams is the chief of the UW School of Medicine's neonatology division, and thus holds a high-ranking position like Wald and Golden. Mezu-Ndubuisi also alleges that McAdams was her direct supervisor. The court will deny the UW Hospital defendants' motion to dismiss the FMLA interference claim against Wald, Golden, and McAdams.

Mezu-Ndubuisi alleges throughout the amended complaint that each defendant was her employer and that each defendant was responsible for each action and omission of every other defendant. Mezu-Ndubuisi's sweeping allegations of collective responsibility don't support FMLA liability against any other defendant. *Cf. Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("A complaint based on a theory of collective responsibility must be dismissed.").

15

Mezu-Ndubuisi's interference claim doesn't involve any Meriter employee, so the court will dismiss this claim against Meriter.

Mezu-Ndubuisi seeks punitive damages based on the FMLA claims, but she concedes that the statute doesn't authorize punitive damages. Although the request for punitive damages is not a separate claim, it's appropriate here to clarify that Mezu-Ndubuisi is not entitled to punitive damages on her FMLA claims.

To sum up, Mezu-Ndubuisi is proceeding on an FMLA retaliation claim against Meriter, Wald, and Golden, and on an FMLA interference claim against the Board of Regents, Wald, Golden, and McAdams.

**F.  "John Doe" defendants**

The court will not allow Mezu-Ndubuisi to proceed against the Doe defendants because she doesn't allege that any Doe defendant participated in the FMLA violations on which she's proceeding. Again, sweeping allegations of collective responsibility don't plausibly support such an inference.

**G.  Whether defendant Lindsay was served with process**

The Meriter defendants contend that Meriter's chaplain, defendant Lindsay, should be dismissed because Mezu-Ndubuisi failed to serve her with process. The court need not address the service issue because my analysis shows that Mezu-Ndubuisi cannot state a claim against Lindsay because he was not her supervisor and thus cannot be liable under either the Rehabilitation Act or FMLA.

16

CONCLUSION

The court will grant the motions to dismiss only in part. The court's decision on the Title VII and ADA claims is provisional: the court will give Mezu-Ndubuisi the opportunity to show cause why summary judgment should not be granted on them.

If summary judgment is granted on the Title VII and ADA claims, the case will proceed only on: (1) a Rehabilitation Act claim against the Board of Regents and Meriter; (2) an FMLA retaliation claim against Meriter, Wald, and Golden; and (3) an FMLA interference claim against the Board of Regents, Wald, Golden, and McAdams.

ORDER

IT IS ORDERED that:

1.  The defendants' motions to dismiss, Dkt. 65 and Dkt. 67, are GRANTED in part and DENIED in part.

2.  On the timeliness of the Title VII and ADA claims, the defendants' motions to dismiss are converted to ones for summary judgment. No later than February 25, 2025, plaintiff must show cause why summary judgment should not be granted to defendants.

3.  Plaintiff's other claims are DISMISSED with prejudice.

4.  Defendants UW-Madison, Wetzel, Erickson, Menda, Meriter Executive Board Committee, Lindsay, Nibbelink, Pritts, Henseler, and Does 1–10 are to be removed from the case.

Entered February 14, 2025.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

17